IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:24-CV-65-FL

| | | |
|---|---|---|
| CHEYENNE LITTLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| IQ DATA INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant.[1] | ) | |

This matter is before the court upon defendant's motion to dismiss under Rules 12(b)(1) and (b)(6) (DE 17). For the following reasons, the motion is denied.

### STATEMENT OF THE CASE

Plaintiff commenced this statutory tort action April 24, 2024, asserting three claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"): 1) for failure to follow reasonable procedures to ensure accuracy, against former defendant Trans Union, 2) for failure to perform a reasonable reinvestigation, against Trans Union, and 3) for failure to conduct a reasonable investigation of disputed information and to review relevant information provided by a consumer, against defendant, a collection agency. Plaintiff seeks compensatory and punitive damages, plus fees and costs.

Plaintiff voluntarily dismissed all claims against former defendant Trans Union September 11, 2024, so only the third claim just noted, asserted against defendant, remains live.

---

[1] The court constructively amends the caption to reflect plaintiff's voluntary dismissal of former defendant Trans Union LLC on September 11, 2024. (Notice Dismissal (DE 24)).

Defendant filed the instant motion to dismiss, on the basis of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Plaintiff responded in opposition and defendant replied.

The case management order entered October 8, 2024, sets a deadline for discovery in this action March 28, 2025, and dispositive motions May 2, 2025.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows. Plaintiff lives in Swansboro, North Carolina, while defendant is a collection agency headquartered in Washington state. (Compl. (DE 1) ¶¶ 1, 4). In 2019, plaintiff and her then-boyfriend Jesse Bills ("Bills") applied for an apartment together in Jacksonville, North Carolina. However, by the time came for plaintiff to sign the lease, she had broken up with Bills due to domestic violence and so never signed the lease. (Id. ¶ 20). Plaintiff never lived at the apartment complex, but Bills used plaintiff's name and information on the lease and then failed to make rental payments. (Id. ¶¶ 21–23). The apartment complex therefore assigned the debt, supposedly owed by plaintiff, to defendant for collections. (Id. ¶¶ 23–24).

In June 2019, defendant began furnishing data about the debt to Trans Union (the "Tradeline"), which plaintiff discovered the same month. (Id. ¶¶ 25–26).[2] Defendant reported the debt as to the sum of $2,364.00, 100% unpaid, with the apartment complex noted as the original creditor. (Id. ¶ 27). Between 2019 and 2021, plaintiff unsuccessfully disputed the debt with the apartment complex on grounds that she had neither signed any lease nor lived in the complex. (Id. ¶ 29). Eventually plaintiff contacted the Swansboro police department and submitted a police

---

[2] The parties both use the term "tradeline" for the information defendant furnished to Trans Union. The court follows this convention.

report about the fraud and identity theft committed by Bills. (Id. ¶ 30). Plaintiff used this police report to dispute the debt with Trans Union and defendant. (Id. ¶ 31).

In March, 2023, plaintiff applied for a credit card issued by Goldman Sachs. Goldman Sachs requested a copy of plaintiff's credit report, which Trans Union provided, including the inaccurate tradeline. (Id. ¶¶ 32–34). Goldman Sachs denied the application, citing her credit history as provided by Trans Union. (Id. ¶¶ 35–36). A materially identical sequence of events repeated in May, 2023. (Id. ¶¶ 37–41).

On October 25, 2023, plaintiff submitted a written dispute to both defendant and Trans Union with supporting documentation. (Id. ¶¶ 42–48). Trans Union did not correct its information after defendant reaffirmed its accuracy. (Id. ¶¶ 59–64). Plaintiff therefore submitted another dispute letter to Trans Union on December 19, 2023, of which defendant received notice directly from Trans Union. (Id. ¶¶ 65–67). Sometime between January 19 and 22, 2024, plaintiff learned and confirmed that defendant's tradeline had been removed and was no longer reported on her credit report. (See id. ¶¶ 68–69). Plaintiff asserts that she has incurred denial of credit, loss of credit, chill from applying for credit, loss of time and money disputing the tradeline, and other economic and emotional injuries. (Id. ¶ 70).

## COURT'S DISCUSSION

A.  Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).[3] Such a motion may either 1) assert the complaint fails

---

[3]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B. Analysis

Defendant asserts that plaintiff lacks Article III standing. On the merits, it argues that plaintiff's claim against it is time-barred and fails to state a claim.

1. Standing

The court must address standing first because it implicates federal subject matter jurisdiction. See Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548 (4th Cir. 2006).

The three elements of standing are well-established: 1) an injury in fact that is both concrete and particularized, 2) that is traceable to the defendant's conduct, and which 3) will be redressed by a favorable decision. FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024). The basis

for defendant's standing challenge is not clear; the heading of the section on standing in its brief appears to contest only the injury element, but the body of its argument addresses only the other two elements. (See Def's Br. (DE 18) 8–9). Out of an abundance of caution, the court will address all three elements.

Here, plaintiff satisfies the injury element because she makes allegations about damaged credit, economic damages, and emotional injuries. (See Compl. ¶ 70). These types of damages plainly constitute injury necessary to satisfy Article III standing. Uzuegbunam v. Preczewski, 141 S. Ct. 792, 802 (2021) (holding that even nominal damages satisfy standing injury element). In addition, in the context of FCRA cases, courts in this circuit routinely hold that these forms of damages satisfy the injury element of standing. See, e.g., Miller v. Dish Network, LLC, 326 F. Supp. 3d 51, 61 (E.D. Va. 2018) (collecting cases). Similarly, courts have accepted that inaccurate reporting of non-existent debts to others, such as credit agencies, constitutes an injury in fact. See Losch v. Nationstar Mortg. LLC, 995 F.3d 937, 943 (11th Cir. 2021); Chuluunbat v. Experian Info. Sols., Inc., 4 F.4th 562, 566 n.3 (7th Cir. 2021). Thus the injury in fact element is met.

Defendant's standing argument appears targeted at the other two elements. Defendant asserts, in conclusory fashion, that plaintiff fails to show her injuries are traceable to defendant, and that her injuries are not redressable because they did not violate FCRA. These assertions are unavailing at this juncture. The complaint alleges facts permitting a plausible inference that defendant's reporting of the allegedly non-existent debt to Trans Union, and its reaffirmation of the allegedly incorrect information's accuracy, led directly to her harms noted above. (See Compl. ¶¶ 25, 27, 31, 36, 40, 45, 46, 60, 63). Finally, defendant's redressability argument, that plaintiff's injuries cannot be remedied because defendant did not violate FCRA (see Def's Br. 9), is not a standing argument, but a merits point improperly given a standing label. And given that

5

traceability and redressability are "often flip sides of the same coin," FDA, 602 U.S. at 380, the court concludes that because plaintiff meets the traceability element, she satisfies the redressability element too.

    2.    Merits

On the merits, defendant advances arguments based on the statute of limitations and lack of allegations sufficient to failure to state a claim.

    a.    Statute of Limitations

Defendant argues that the two-year FCRA statute of limitations began running when plaintiff discovered the allegedly inaccurate debt on her credit report in 2019, or when she sent a dispute to defendant in 2021, rendering her 2024 complaint untimely. The court disagrees.

The responsibilities of "furnishers of information to consumer reporting agencies," such as defendant, are governed by 15 U.S.C. § 1681s-2. This section mandates that upon receiving a notice of dispute from a credit agency under 15 U.S.C. § 1681i(a)(2), the furnisher must conduct an investigation about the disputed information, report the results to the credit agency, and several other obligations if the investigation uncovers false or inaccurate information. See id. § 1681s-2(b); Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142, 149 (4th Cir. 2008) (recognizing that these provisions are privately actionable).

The United States Court of Appeals for the Fourth Circuit has not addressed the statute of limitations accrual date for purposes of an FCRA claim under this provision. However, most courts interpreting FCRA's statute of limitations in this context apply the rule plaintiff suggests, holding that the claim accrues upon the entity's failure to conduct a reasonable investigation of the dispute as § 1681s-2(b) mandates.

6

For example, the United States District Court for the Southern District of New York, albeit in an unpublished opinion, convincingly explained, "plaintiff was aware of issues with [defendant's] credit determination as early as 2018 . . . but plaintiff did not discover [defendant's] 2020 violation . . . regarding its failure to investigate . . . until November 2020." Manes v. JPMorgan Chase Bank, N.A., No. 20-cv-11059, 2022 WL 671631, at *3 (S.D.N.Y. Mar. 7, 2022) (emphases added). And "[b]ecause each notice of a dispute triggers a separate duty to investigate, it also triggers a separate statute of limitations." Id.

Numerous courts have followed the same reasoning. See, e.g., Milgram v. Chase Bank USA, N.A., 72 F.4th 1212, 1219 (11th Cir. 2023) (noting lack of appellate authority on question but embracing plaintiff's rule); Marcinski v. RBS Citizens Bank, N.A., 36 F. Supp. 3d 286, 290 (S.D.N.Y. 2014); Broccuto v. Experian Info. Sols., Inc., No. 3:07cv782, 2008 WL 1969222, at *4 (E.D. Va. May 6, 2008); Ardoin v. Citibank N.A., No. 2:20-cv-01088, 2020 WL 5997267, at *4 (W.D. La. Oct. 8, 2020); Escobar v. Pa. Higher Educ. Assistance Agency Servs., LLC, No. 17-4212, 2018 WL 1740364, at *5 (E.D. Pa. Apr. 11, 2018) (collecting cases). This reasoning is persuasive. The text of FCRA unambiguously reflects that the act that creates liability is the failure to investigate, not the submission of a dispute letter itself. See 15 U.S.C. § 1681s-2(b)(1) ("after receiving notice . . . of a dispute . . . the person shall [take certain actions]" (emphases added)). The submission of a dispute is merely a trigger for other duties, on which plaintiff here sues.

Defendant relies upon three cases that do not persuade the court to break with both the plain text of the statute and a consistent judicial interpretation thereof. In the first, the credit information furnisher conducted its investigation, but the plaintiff waited more than two years after receiving the results of the investigation to file suit, reflecting merely an application of the rule noted above. See Croft v. Bayview Loan Servicing, LLC, 166 F. Supp. 3d 638, 641–42 (D.S.C.

2016). Defendant's second case appears to support its argument, at least to some extent, as the court there stated that the statute of limitations begins to run from the plaintiff's discovery of the inaccurate information, not the failure to investigate. See Bruce v. Bank of Am., N.A., No. 2:19-03456, 2020 WL 7249876, at *3–4 (D.S.C. Oct. 22, 2020). But the court cannot agree with the Bruce court's discussion, and instead concurs with the cases cited above as more consonant with the statute's text. Defendant's final case is inapposite, as the plaintiff there sued under a different section of the statute not involved in this case. See Mack v. Equable Ascent Fin., LLC, 748 F.3d 663, 665 (5th Cir. 2014) (applying § 1681b for claim of obtaining credit report without consent)

The court therefore rejects defendant's timeliness arguments.

      b.      Failure to State a Claim

Last, defendant advances arguments on the merits of plaintiff's claim, which the court need address only briefly. See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (stating that a Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses").

Defendant argues that it did not have to discover the inaccuracy of the information so long as it conducted some inquiry, and that the eventual removal of the tradeline from plaintiff's credit report in early 2024, shortly after plaintiff's last dispute in October 2023, demonstrates its compliance with the statute. These arguments are unavailing at this juncture. First, the complaint, which the court must accept as true at this stage, alleges that defendant and Trans Union investigated the debt upon plaintiff's October, 2023 dispute, and wrongly reaffirmed its accuracy on November 3, 2023. (See Compl. ¶¶ 59–64). In the complaint's telling, which the court must accept as true at this point, the eventual removal of the tradeline was a fortuitous event unconnected to the actions of defendant.

Next, an investigation under FCRA must be reasonable, and the failure to discover inaccurate information can render an investigation unreasonable and so violative of FCRA. See Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004). Indeed, determination of reasonableness of an investigation is ordinarily improper even at summary judgment, and normally reserved for a factfinder. See, e.g., Abu-Eid v. Discover Prods., Inc., 589 F. Supp. 3d 555, 566 (E.D. Va. 2022); Maiteki v. Marten Transp. Ltd., 828 F.3d 1272, 1275 (10th Cir. 2016); Crabill v. Trans Union, LLC, 259 F.3d 662, 664 (7th Cir. 2001). This argument therefore cannot succeed in this posture.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (DE 17) is DENIED. The parties were reminded in the clerk's notice October 8, 2024, about mediation requirements. If there is joint determination that limited stay of schedule imposed in case management order entered that same date, for purposes of focusing upon some alternative dispute resolution technique, may aid in just, speedy, and inexpensive determination of the action, the parties shall submit proposed consent order by November 8, 2024

SO ORDERED, this the 28th day of October, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge

9

Case 4:24-cv-00065-FL   Document 27   Filed 10/28/24   Page 9 of 9